**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. Case No. 25-cr-162-CNS

UNITED STATES OF AMERICA,

      Plaintiff,

v.

ADEPOJU BABATUNDE SALAKO,

      Defendant.

---

**DEFENDANT'S MOTION FOR A DEPARTURE OR VARIANCE PURSUANT TO
D.C.COLO.LCrR 32.1(c)**

---

COMES NOW, the Defendant, ADEPOJU BABATUNDE SALAKO (hereinafter "Defendant" or "Mr. Salako") by and through his attorneys of record Michael L. Becker and Mark T. Savoy, who hereby submit her motion for a downward departure and/or variance pursuant to DC Colo LCrR 32.1(c).

As set forth in the sections that follow, Mr. Salako respectfully requests that this Court downward depart based on extraordinary family circumstances and other factors pursuant to 18 U.S.C. § 3553(a), and further that this Court fashion a sentence that is "sufficient but not greater than necessary" to comply with the goals of sentencing set forth in 18 U.S.C. § 3553(a)(2).

## I.    <u>INTRODUCTION</u>

Mr. Salako awaits sentencing after pleading guilty to one count of Conspiracy to Commit Wire Fraud under 18 U.S.C. § 1349 and one count of Conspiracy to Commit Money Laundering pursuant to 18 U.S.C. § 1956(h).

Sentencing is currently scheduled for February 25, 2026, at 10:00 AM before this Honorable Court.

## II.    SENTENCING GUIDELINES

In *United States v. Booker,* 543 U.S. 220; 125 S. Ct. 738; 160 L.Ed. 2d 621 (2005), the United States Supreme Court invalidated both the statutory provision, 18 U.S.C. § 3553(b)(1), which made the Sentencing Guidelines mandatory, and §3742(e), which directed appellate courts to apply a *de novo* standard of review to departures from the *Guidelines*. As a result of this decision, the *Guidelines* are advisory, and appellate review of sentencing decisions is limited to determining whether they are "reasonable." The explanation of "reasonableness" review in the Booker opinion made it clear that the familiar abuse-of-discretion standard of review now applies to appellate review of sentencing decisions.  *See Booker,* 543 U.S., at 260-262; *see also Rita v. United States*, 551 U.S. 338; 127 S. Ct. 2456, at 2470; 168 L. Ed. 2d 203 (2007) (Stevens, J., *concurring*).

The U.S. Supreme Court expanded on the "reasonableness" standard of *Booker* clarifying that: "**Federal case law does not allow a sentencing court to presume that a sentence within the applicable U.S. Sentencing Guidelines Manual range is reasonable as the sentencing court does not enjoy the benefit of a legal presumption that a U.S. Sentencing Guidelines Manual should apply.** District Judges, in considering how the various statutory sentencing factors apply to an individual defendant, may not presume that the Guidelines range is reasonable." *Nelson v. U.S*., 129 S. Ct. 890, 892; 172 L. Ed. 2d 719 (2009) (*emphasis added).*

In *Rita v. United States,* the United States Supreme Court clarified the specific steps that must be taken by a district court in imposing sentence. A district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. *See Rita,* 551 U.S. at 347-348. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The *Guidelines* are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, **the district judge should then consider all the §3553(a) factors to determine whether they support the sentence requested by a party.  In so doing, he (or she) may not presume that the Guidelines range is reasonable.**  *See Id.* at 351 (*emphasis added).* She must make an individualized assessment based on the facts presented. If she decides that an outside-Guidelines sentence is warranted, she must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. After settling on the appropriate sentence, she must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing. Id.

The *Booker* Court recognized the importance of considering a multitude of factors and not just the Sentencing Guideline range when imposing sentencing. The Court mandated the district courts to consider the directives set forth in 18 U.S.C. § 3553(a). Booker, 543 U.S. at 245. 18 U.S.C. § 3553(a) requires courts to, "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." 18 U.S.C. §3553(a)(2) defines such purposes as:

> (A)  to reflect the seriousness of the offense, to promote respect for the law, and to

3

provide just punishment for the offense;
(B)  to afford adequate deterrence to criminal conduct;
(C)  to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, 18 U.S.C. § 3553(a) further directs sentencing courts to consider the following factors:

1)  the nature and circumstances of the offense and the history and characteristics of the defendant;
2)  the kinds of sentences available;
3)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct and
4)  the need to provide restitution to any victims of the offense.

These factors, which *Booker* held as necessary to a sentencing analysis, create a framework that focuses on the unique situation of every individual sentenced.

Additionally, a district court may depart from the applicable guideline range if it finds "that are exists an aggravating or mitigating circumstance of a kind or to a degree, not adequately taken into consideration by the sentencing commission" and therefore should result in a sentence different from that described.  *U.S. v. Sierra-Castillo*, 405 F.3d 932, 939 (10th Cir. 2005).

When determining if a downward departure for sentence is appropriate courts must "First, identify the factor or factors that potentially take the case outside the Guidelines' "heartland" and make it special or unusual. Second, determine whether the Guidelines forbid departures based on the factor, encourage departures based on the factor, or do not mention the factor at all. Third, apply the appropriate rule: (1) if the factor is forbidden, the court cannot use it as a basis for departure; (2) if the factor is encouraged, the court is authorized to depart if the applicable guideline does not already take it into account; (3) if the factor is discouraged, or encouraged but already taken into account by the

applicable guideline, the court should depart only if the factor is present to an exceptional degree, or in some other way makes the case different from the ordinary case in which the factor is present; or (4) if the factor is unmentioned, "the court must, after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole, decide whether [the factor] is sufficient to take the case out of the Guideline's heartland." *U.S. v. Bayles*, 508 F.3d 1302, 1310 (10th Cir. 2002) (citing *Koon v. United States,* 518 U.S. 81, 92-96, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).

In sum, the above cases stand for the proposition that in every case a sentencing court must consider all §3553(a) factors, not just the guidelines in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing.

III.     **VARIANT SENTENCE UNDER 18 U.S.C. § 3553(a)**

Mr. Salako has a four-year-old daughter, Zara Salako, who has been diagnosed with Autism Spectrum Disorder[1] (ASD) (*See* PSR, ECF 34, ¶91, Ex B- Report of Nandini Iyengar, M.D.) ASD is a neurological and developmental disability that affects how people interact, communicate, behave, and learn. It is a "spectrum" because it involves a wide range of symptoms and abilities. Zara has demonstrated speech delay and feeding concerns, refusing to eat solid food. According to the doctor's report: "She hums and sings constantly but she does not have any functional speech…[s]he does not respond to her name or follow simple instructions…[s]he does not interact with other children."

The impact of Zara's disorder is referenced in the letter submitted by Olasumbo Akinmusire, Mr. Salako's wife. (*See* Ex C), who explains that Zara "requires consistent

---

[1] *See* Ex A, "Autism spectrum disorder: definition, epidemiology, causes and clinical evaluation", *Transl Prediatr* 2020; 9 (Suppl 1): S55-S65.

care, structure, and emotional support." She further states: "Our autistic child depends greatly on his presence, compassion, and stability, comfort and reassurance. My husband has demonstrated patience, compassion, and understanding in caring for our child's needs, often stepping in during moments of distress and ensuring that our child feels safe and supported." She explains that Mr. Salako's incarceration "…has placed an overwhelming burden on [her] as the sole caregiver, especially in managing the specialized care and consistency required for our autistic child", further referencing how Mr. Salako's incarceration "negatively effects [Zara's] emotional regulation, development, and overall well-being."

Although the former USSG §5H1.6 Family Ties and Responsibility (Policy Statement) made clear that family circumstances "are not normally relevant in determining whether a departure may be warranted", a departure may be justified in extraordinary circumstances", that provision has been deleted effective November 1, 2025. However, this Court still has discretion to consider the circumstances under 18 U.S.C. § 3553(a), specifically (1) the nature and circumstances of the offense and the history and characteristics of the defendant.

As demonstrated by the letter provided by his wife, Mr. Salako's incarceration shifts the bulk of responsibility for caring for their autistic daughter to his wife, although she does receive some assistance from his family, as attested in the PSR (ECF 34, ¶91). That said, the longer Mr. Salako is incarcerated, the heavier that burden is to bear. Additionally, Mr. Salako's incarceration precludes him from working to assist his family financially in relation to Zara's medical needs.

6

The Defense proffers that under the circumstances herein, this Court should find extraordinary circumstances justify the imposition of a variant sentence. *See United States v. Johnson*, 964 F.2d 124, 125 (2d Cir. 1992); *United States v. Munoz-Nava*, 524 F.3d 1137, 1142–43 (10th Cir. 2008); and Danielle Sparber Bukacheski, Considering Caretakers: *An Explicit Argument for Downward Departures During Federal Sentencing Mitigation for Caretakers of Children*, 78 U. Mia. L. Rev. 917 (2024).

## IV.    OTHER FACTORS UNDER 18 U.S.C. § 3553(a)

In further consideration of a variant sentence under 18 U.S.C. § 3553(a), the defense submits character letters in support of Mr. Salako (*See* Ex D). The Court has received multiple character letters from Mr. Salako's father, two sisters, and his longtime pastor. Although each letter reflects a different perspective, they are remarkably consistent in describing Mr. Salako as compassionate, family-oriented, remorseful, and capable of rehabilitation.

1. Lawrence Adegoke Salako (Father)

Mr. Salako's father describes his son as "a humble and kind person… caring and always ready to give especially to less privileged individuals." He recounts that Mr. Salako "distributed food and clothing to the needy on several occasions" and even assisted a retired teacher's family "financially at a critical moment." Importantly, his father confirms that since incarceration Mr. Salako "shows full remorse… and regrets all his folly and the disgrace he brought upon my family." He reports that his son has "realized the big shame and disgrace and stress his behavior has caused" and "promised that would never happen again." The letter also highlights the broader family impact: Mr. Salako's two young children "pray to have him back home," and his

7

mother—recently battling breast cancer—has suffered declining health during his incarceration.

## 2. Dr. Opeyemi Ola (Elder Sister)

Dr. Ola, a physician, offers a lifelong perspective. She recalls holding his hand as a child and living with him during university. She describes him "at his core" as "a respectful and kind individual, always willing to assist others." She provides a concrete example of his character: during his university years he "dedicated his weekends" to ensuring their elderly landlord and his wife had supplies, running errands and even "walking long distances to fetch water." She emphasizes that "this selfless nature has continued throughout his life." Dr. Ola confirms that since incarceration he has "expressed profound remorse… and a clear understanding of the consequences," and states that this offense "is an aberration and does not reflect his true character." She notes the profound emotional toll on his two young children and their mother's declining health.

## 3. Bishop Olumuyiwa Ojo (Pastor)

Bishop Ojo, who has known Mr. Salako for more than six years as a congregant, describes him as "a compassionate person, a dedicated nurse, and a loving husband and father." He specifically notes Mr. Salako's "steadfast devotion to his family, particularly in the care of his autistic child." While acknowledging the seriousness of the offense, Bishop Ojo writes that "the man I have known is not one who acts with malice or disregard for others." Since arrest, Mr. Salako has engaged in "prayer, counseling, and reflection," and the Bishop personally testifies to his "remorse, spiritual brokenness,

and genuine efforts to rebuild his moral foundation." He concludes that Mr. Salako is "capable of complete rehabilitation" and "determined to reform, rebuild trust, and live a life grounded in integrity and faith."

4. Adenike Salako (Younger Sister)

Ms. Adenike Salako recounts immigrating to the United States with her brother and describes how, at eleven years old in a new country, he "helped me navigate the new environment," guiding her through school and cultural assimilation. She states that he encouraged her educational advancement, supporting her through nursing school at Thomas Jefferson University. She describes him as "a respectful and benevolent man" and "a great father" to his children. Since incarceration, she confirms he is "intensely remorseful of his actions."

Finally, Mr. Salako provides his own letter for the Court's consideration. (*See* Ex. E, including a picture of Mr. Salako distributing food in Africa.)

## V.    CONCLUSION

WHEREFORE, in consideration of the above, the defense asks this Court for a variant sentence.

DATED this 11th day of February 2026.

Respectfully submitted,

*/s/ Michael L. Becker*
Colorado Attorney Registration No.: 28285
*/s/ Mark T. Savoy*
Colorado Attorney Registration No.: 51452
Colorado Legal Defense Group, LLC
Attorneys for Defendant

9

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on February 11, 2026, I electronically filed the foregoing **DEFENDANT'S SENTENCING MEMORANDUM** with the Clerk of the Court using the CM/ECF system, which will send notice of the filing to all parties of record.

*/s/ Michael L. Becker*